548 S.E.2d 595

SEA CABINS ON THE OCEAN IV HOMEOWNERS ASSOCIATION, INC., Grand Strand Realty, Gerald W. Arney, Mary P. Arney, Bobby McLean, Thelma McLean, Thomas P. Woodruff, Virginia C. Woodruff, Ronald L. Peck, Philip H. Morris, Linda M. Morris, Jack L. Tyson, Shirley S. Tyson, Timmy R. Helms, Thomas Minton, Frank R. Buoniconti, Jeanne L. Buoniconti, Robert A. DeSimone, Jim F. Moore, Jo Mingas Moore, William R. Kennedy, Jr., Hilda B. Kennedy, Steve A. Brock, Gary W. Alphin, W.F. Tugwell, Jr., Ronald D. Hall, Bath Investments Properties, c/o Thomas Myers, David L. Saunders, Ray A. Bolick, Nancy P. Bolick, Elizabeth Kandler Elliott f/k/a Elizabeth A. Kandler, Jimmy L. Love, Etta Love, Charles A. Ginardi, Carol W. Ginardi, Russell L. Pinkelton, R. Steve Metcalf, Ray

E. Jennings, L. Derek Herring, William P. Brown, J.P. Batten, Jr., Tony Sherrill, Carolyn H. Sherrill, Joseph M. Baker, Martha K. Baker, Don Ferrell, Nancy C. Williamson, Alan H. Branan, Francis G. Logue, Patricia J. Logue, Dominick Mauriello Trust f/k/a Dominick Mauriello and Marjorie Mauriello, John W. Blake, Sharon D. Blake, Bobby Young, Forrest D. Bricker, Robert E. Sease, Jane A. Sease, Howard E. Virkler, Macy L. Hoyle (died 9/13/90), Jane Brendel, Richard Brendel, Stacy Jean Snyder, Fred M. Snyder, Joyce Snyder, Daniel E. Wilson, Wanda M. Wilson, Bobby J. Garrison, Barbara S. Garrison, Hambry Brothers, Inc., Vera G.M. Hankin, Sarah S. McLean, A.F. McLean, Jr. (as trustee for William H. McLean), Estate of Sarah S. McLean f/k/a Sarah S. McLean, Mellon Bank, Phillips E. Powell, Diane F. Powell, Joseph A. Galiano, Denise Galiano, Vincient and Catherine Pastore, Vincient, Jennifer, and Deigo Monticciolo, Charles H. Hammond, J.E. Bobbit, Jr., Wallace Webster Quate, Jr., William Maegruder, Peggy Maegruder, George W. Joyce, Sara Murray Joyce, Reggie Keith Safrit, Martha Stirewalt Safrit, Beach Properties/Linwood Jackson/James R. Bullock, Jr., Frankwell, a partnership, Edward C. McGimsey, Partner c/o Morganton Hardware Co., James J. Linden, Alice C. Linden, Kirkland P. Broom, Ann S. Broom, John R. Henderson, Mary Ann Henderson, James T. Grier, Janet R. Grier, Emma H. Valentine, Francisco Valentine, Johnny C. Whitmore, Emma G. Whitmore, Guy A. Walters, Jr., Ann H. Walters, Felder W. West, Jack N. Morris, John E. Varol, Ralph V. Varol, Garland J. Candle, Tony R. Craven, Doloris Craven, Grady Oliver, Carol Oliver, Robert C. Barry, Jr., Jimmie R. Foxx, Eva V. Lewis, Richardo F. Cecchini, Nilda E. Cecchini, Anthony P. Sapienza, Anne M. Sapienza, Clyde R. Randal, Jean M. Randal, Bernard J. Milano, Mary N. Milano c/o PMM Company, David Steele Jarrett, Kathy Saunders Jarrett, Charles Weir, James Vernon Gross, Dorothy D. Gross, David R. Eva, Judith E. Eva, Estate of Sara S. McLean f/k/a Sara S. McLean, Richard V. Adams, Sherrell Dennis Hedrick, Galileo D. Casquejo, Thomas M. Clayton, Linda B. Clayton, Russell L. Pinkelton, Judy Pinkelton, Stan Halpern, William D. Powell, Patsy Powell, Jerry L. Calvert, Ruth C. Calvert, W.B. Seddinger, Edward Bell, Jr., Mary Lee M. Bell, Myles G. Keery, Sabra L. Keery, Fleming, Francis & Associates, Burl Kenneth Flemming, Alma Jean Flemming, David Frances, Betty L. Frances, c/o Mr. David L. Frances, Larry Peak, James R. McCracken, Max R. Schmidt, Alice V. Schmidt, Delores Randall, Hambry Brothers Concrete, Inc., Richard Link, Ray

W. Welsh, Wendy C. Welsh, Bobby L. Tuttle, Thomas T. Archer, Martha C. Archer, Ted D. Fuller, Nancy K. Fuller, Danny Edwards, Sandra Edwards, Edwin T. Yarborough, Suzanne C. Yarborough, Epworth Children's Home, Dr. A.W. Macklin, James A. Pierce, III, c/o Marietta Pallet Company, E. Wayne Harper, Brabston B. Harper, John G. Hansen, Richard V. Adams, James H. Kirk, Agnes C. Kirk, W. James Dubose, Henry Voznick, Jean H. Voznick, Thomas F. Conn, Madeline Conn, Arlon O. Jones, Charles E. Ramsey, John M. McCoy, Gerald L. Fowler, William R. McAdams, Jerry E. Moats, Fowler Moats, Inc., Chester F. D'Agostina, Janis R. D'Agostina, Wall–Johnson, Leon W. Wall, Joyce B. Wall, A. Gray Johnson, Jo Ann R. Johnson, JerryMcKee, Donna McKee, James E. Messick, Jr., Jean M. Messick, Arnold M. Schwartz, Janice M. Schwartz, Jing Ming Liu, Ellie Y. Lao, Warren Heiser, Mary Ann Heiser, Earl R. Betts, Jr., Carol A. Betts, John R. Stass, Barbara J. Stass, Hardiena J. Smith, as personal representative of William B. Smith, Jack M. Ladford, Ila L. Carver, Walter W. Little, Doris H. Russ, Kenneth F. Spainhour, Carolina A. Spainhour, John R. Spies, Alice L. Spies, Randall David Torcasi, Robert Q. Yeckley, Carl S. Sigmon, Louie O. Lavender, Jr., Noble Vaughn, Jr., Cornelia L. Vaughn, Larry D. Procter, Kara P. Procter, Roy L. Lynam, Donna A. Lynam, Jeffrey Huber, Deborah J. Huber, Emmett Floyd, Kathy Floyd, James Russell Millner, Donald C. Winterich, Richard R. Steinke, Lewis B. Keener, LaFayette F. Decker, Cecelia M. Decker, Anthony L. Buoniconti, Margaret A. Buoniconti, Calvin L. Palmer, Jr., Rosie B. Palmer, Duane Knight, Sharon G. Knight, W. Glenn Jenkins, Charm House Design, Stephen L. Nader, William O. Reeside, Jane S. Reeside, Michael Ray, Cynthia N. Ray, Don A. Ray, Eleanor J. Ray, Cranston Blanks, Jr., Margaret L. Blanks, J.R. Gibbons, Gladys Gibbons, R.M. Glasscox, Cheryl Glasscox, Haracio P. and Martha A. Moreno–Compos, Gerald V. Hull, Emma J. Hull, James B. Davenport, Carolina Land Company, George E. Wells, Robert W. Braam, Maurice W. Brady, Ronald Bittles, Florence Bittles, David Whitley, Michael G. Carovillano, Judith A. Carovillano, John Petrozzi, Thomas F. Murtha, Dorothy A. Murtha, John F. Quinn, Jane H. Quinn, Presbyterian College c/o Bailey Bank, George W. Wilson, Mark Wilson, Donald M. Bryant, Sandra B. Bryant, Jack Holsclaw, Mary H. Clarke, Valerie H. McRary, Gene S. Clarke, Thomas B. McRary, c/o Skyland Furniture Shoppe, Gerald W. Edmonds, Doris A. Edmonds, Jack S. Brown, Talma L. Brown, David T. McLaughlin, Carol H. McLaughlin, Harry Whitener, Eva S. Whitener, William J.

Brennan, Gracia B.J. Brennan, Jerry R. Sutherland, Jo Ann Sutherland, L.D. Austin Company, Randolph Jones, Frances Jones, Seigfried Abrahams, Harold Langenderfer, Joan M. Langenderfer, Delbert L. and Marianne C. Wolcott, William B. Seddinger, William Harnett, W. Nelson Lewis, Barbara Craven, Helen, Gene, Lance & Teresia Maye, R.A. Elmore, III, Judy A. Elmore, Rodney Thompson, Mark Cosgrove, Evelyn Cosgrove, Robert Brown, Danny G. Turner, Elaine M. Turner, Harry Anedisian, Louise I. Anedisian, Ferrel G. Camp, Joyce A. Camp, Ruth Fridinger, Stephen C. Cesar, Bonnie L. Cesar, John C. Sanders, Ann Marie Sanders, John R. McClure, Rebecca D. McClure, Jay Elliott Gordon, Faye H. Gordon, Gene S. Edmonds, Helen E. Edmonds, F. Bruce Pearch, Florence Pearch, Carl Spahn, Jr., Debra A. Spahn, Ralph J. DeFillips, Dorothy J. Phillips, Mary R. Trogden, Linda S. Toleno, Sally Davis, Stanley L. Smith, Doris H. Smith, Gerald W. Krimminger, Joyce A. Krimminger, Anthony P. Sapienza, Anne M. Sapienza, Daniel P. Mageras, Janet A. Mageras, Earl Downing, Sharon B. Downing, Robert V. Steele, Lori Steele, B.L. Sizemore, D. Ann Sizemore, Roger W. Huffman, Patricia W. Huffman, John W. O'Connor, James W. McMaster, Lana McMaster, Thomas L. Herb, Joy V. Herb, James W. McArthur, Theodore M. Cooley, Ralph W. Pope, Wallace H. Burgess, Gordon McCoy, Mary J. McCoy, John F. Barna, John Capito, Jr., Margaret B. Capito, Harry W. Wayne, David A. Dunlap, Elizabeth Stover, Americo R. Caggiano, Viola Catherine Caggiano, W.B. Seddinger, Reggie K. Safrit, Lori Anne Boyle, Linda Boyle, Fredrick J. Saleeby, Reid S. Saleeby, John G. Underwood, Jr., M/M Edward Gregory, Johnny T. Gregory, Randy S. Hammett, DPS Investment, Francis Feltham, Thomas and Eunice Kirby, Joseph Jengehino, Maryann J. Jengehino, AllanWarrington, Greenville Progressive Womens Investment Club, Robert A. Jackson, Richard Arvonio, Cherry Grove Sales, Inc., Frederick S. Carter, and Patsy S. Carter, Petitioners,

v.

CITY OF NORTH MYRTLE BEACH, Respondent.

No. 25307.

Supreme Court of South Carolina.

Heard March 6, 2001.

Decided June 11, 2001.

Rehearing Denied July 18, 2001.

422

424

Newman Jackson Smith, of Nelson Mullins Riley & Scarborough, of Charleston, for petitioners.

Andrew F. Lindemann and William H. Davidson, II, of Davidson, Morrison and Lindemann, P.A., and W. Cliff Moore, III, of Ellis, Lawhorne and Sims, P.A., of Columbia, for respondent.

BURNETT, Justice:

Petitioners Sea Cabins on the Ocean IV Homeowners Association, Inc., et al., (Sea Cabins) brought this inverse condemnation action against Respondent City of North Myrtle Beach (City) alleging certain "affirmative and aggressive actions" by City constituted an unconstitutional temporary taking of their private pier for public use without compensation in violation of the Fifth Amendment to the United States Constitution and Article I, § 13 of the South Carolina Constitution. The master-in-equity agreed and awarded Sea Cabins $900,000 as just compensation for the temporary taking.

Finding Sea Cabins was not denied "all economically viable use" of its property as a whole during the alleged temporary taking, the Court of Appeals unanimously reversed. *Sea Cabins on the Ocean IV Homeowners Assoc., Inc., v. City of North Myrtle Beach,* 337 S.C. 380, 523 S.E.2d 193 (Ct.App. 1999). The Court granted Sea Cabins' petition for a writ of certiorari to review the Court of Appeals' decision.

## FACTS

Sea Cabins was created by master deed in 1980 pursuant to the South Carolina Horizontal Property Act. S.C.Code Ann. §§ 27–31–10 to—420 (1991). A private 900 foot fishing pier extending into the Atlantic Ocean was included in Sea Cabins' common elements. On September 21, 1989, Hurricane Hugo damaged the pier.

By letters dated February 1 and 20, 1990, City Manager notified Sea Cabins he was going to recommend to City that the remaining portion of its pier (and other similar piers) be declared a nuisance and action be taken to remove them. On March 6, 1990, City adopted a resolution declaring all public and private pier pilings, including Sea Cabins' pier, public

nuisances and ordering that they be removed within forty-five days.

Sea Cabins notified City Manager it intended to rebuild the pier and requested several extensions of time in which to file a repair permit application. The City granted Sea Cabins several extensions.

On March 20, 1990, City Council gave first reading to a proposed Beach Franchise Ordinance which provided that any pier permitted to be rebuilt must be rebuilt as a public pier. By letter dated March 23, 1990, the City Manager informed Sea Cabins that City Council had discussed that all built and rebuilt piers must be open to the public. In the same letter, the City Manager recognized Sea Cabins intended to rebuild its pier and granted a 60–day extension by which to abate the pilings nuisance.

On April 9, 1990, City ratified the Beach Franchise Ordinance. As a result of this ordinance, Sea Cabins had to either 1) execute the non-negotiable pier franchise agreement, thereby allowing public access to the pier, or 2) accept denial of a permit to repair the pier, resulting in declaration of the pier as a public nuisance and having it removed.

On June 25, 1990, Sea Cabins submitted an application, including plans and specifications, to City for a permit to repair its pier as a non-conforming use.[1] Sea Cabins did not execute a pier franchise agreement.

Three days later, Sea Cabins filed an action in federal district court against City alleging its actions (declaration of the pier as a nuisance and passage of the Beach Franchise Ordinance) resulted in the unlawful taking of private property in violation of various provisions of the United States and South Carolina Constitutions. On July 2, 1990, the federal court conducted a hearing on Sea Cabins' motion for a temporary restraining order seeking to enjoin City from removing the remainder of the pier. Sea Cabins agreed to remove unsafe portions of the pier and City agreed it would not attempt to remove any other portions of the pier. This

---

1. Under City's zoning ordinance, Sea Cabins' pier was a nonconforming use because the area in which it existed was not zoned for that use when City incorporated.

agreement rendered City's nuisance claim against Sea Cabins' pier moot.

During this time frame, City's Chief Building Inspector and a structural engineer inspected and reviewed Sea Cabins' pier. In mid-August 1990, City's Zoning Administrator rejected Sea Cabins' pier repair permit on the basis the pier was destroyed, not merely damaged, and informed Sea Cabins the pier could not be reconstructed until receipt of a special zoning exception. *See* CITY OF NORTH MYRTLE BEACH, SC, CODE Article VII, § 23–133(3) ("[a] nonconforming use shall not be reestablished after damage to the building exceeding seventy-five (75) percent of its replacement cost at the time of destruction.") (Zoning Ordinance). The Zoning Board of Adjustment affirmed the Zoning Administrator's decision on October 9, 1990. The circuit court affirmed.

On June 22, 1992, the federal district court granted Sea Cabins partial summary judgment. The federal court found City's April 1990 ordinance void as applied to Sea Cabins because state law permitted the rebuilding of piers which were in existence prior to Hurricane Hugo. *See* S.C.Code Ann. § 48–39–290(A)(3) (Supp.2000) (non-public fishing piers which existed on September 21, 1989, may be rebuilt and used for the same purposes).

Initially, the Court of Appeals issued an opinion upholding the circuit court's order affirming the Zoning Board's ruling Sea Cabins could not rebuild the pier because it was more than 75% destroyed. Thereafter, the Court of Appeals granted Sea Cabins' petition for rehearing and issued a new opinion reversing the circuit court's order. *Sea Cabins on the Ocean IV Homeowners Assoc. v. North Myrtle Beach Zoning Board of Adjustment,* Op. No. 93–UP–081 (S.C. Ct.App. filed June 24, 1993). The Court of Appeals held the circuit court applied an incorrect standard in finding the pier was more than 75% destroyed rather than determining whether the cost of repairs exceeded 75% of the cost to replace the pier at time of its destruction. *Id.*

On July 29, 1993, the federal district court entered an order finding Sea Cabins had a property interest in the pier, but that its takings claim was premature because Sea Cabins had not sought compensation under available state procedures.

*Sea Cabin on the Ocean IV Homeowners Assoc. v. City of North Myrtle Beach,* 828 F.Supp. 1241 (D.S.C.1993). As a result, on August 12, 1993, Sea Cabins brought the instant inverse condemnation action.

On December 20, 1993, this Court denied City's petition for a writ of certiorari to review the Court of Appeals' decision reversing the Zoning Board decision.

City issued Sea Cabins a pier building permit on April 19, 1994. After several revisions, construction and repair began on October 10, 1994, and the pier was completed in March 1995.

## ISSUE

Did the Court of Appeals err by analyzing Sea Cabins' inverse condemnation action as involving a temporary regulatory rather than a temporary physical taking?

## DISCUSSION

### Court of Appeals' Opinion

Relying on federal law, the Court of Appeals held a temporary taking effected by a regulation is compensable if it denies the landowner all economically viable use of his land. The court concluded because it is appropriate to consider the landowner's "parcel as a whole," loss of use of the pier did not deny all economically viable use of Sea Cabins' property and, therefore, there was no compensable taking. *Sea Cabins on the Ocean IV Homeowners Assoc. v. City of North Myrtle Beach,* 337 S.C. 380, 523 S.E.2d 193 (Ct.App.1999).

Thereafter, the Court of Appeals cited the elements of an inverse condemnation action: (1) an affirmative, positive, aggressive act on the part of the governmental agency; (2) a taking; (3) the taking is for a public use, and (4) the taking has some degree of permanence. *Gray v. South Carolina Dept. of Highways and Public Transp.,* 311 S.C. 144, 427 S.E.2d 899 (Ct.App.1992). Noting South Carolina has recognized a temporary taking in two inverse condemnation cases and that both of these cases applied federal law,[2] the Court of

---

2. The Court of Appeals referred to *Lucas v. South Carolina Coastal Council,* 309 S.C. 424, 424 S.E.2d 484 (1992), and *Staubes v. City of*

Appeals "juxtaposed" the requirement that a temporary taking must be compensable under federal law. Accordingly, under the Court of Appeals' analysis, since City's actions did not deny Sea Cabins all economically viable use of its land, there was no compensable temporary taking, and Sea Cabins failed to establish the "some degree of permanence" element of inverse condemnation.

Sea Cabins argues the Court of Appeals erred by analyzing this action as a regulatory rather than a physical taking. As a part of this claim, Sea Cabins maintains that because the issuance of a pier repair permit was conditioned on public access, a physical taking occurred. We affirm in result.

### Physical vs. Regulatory Takings

The Fifth Amendment to the United States Constitution provides that "private property shall not be taken for public use, without just compensation." U.S. Const. amend. V.[3] "[T]his provision does not prohibit taking of private property, but instead places a condition on the exercise of that power." *First English Evangelical Lutheran Church of Glendale v. Los Angeles,* 482 U.S. 304, 314, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). The purpose of the Takings Clause is to prevent the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). "[T]he Fifth Amendment is violated when land use regulation 'does not substantially advance legitimate state interests or denies an owner economically viable use of his land.'" *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1016, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), *citing Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980).

---

*Folly Beach,* 331 S.C. 192, 500 S.E.2d 160 (Ct.App.1998). These cases involve regulatory takings.

*DeStefano v. City of Charleston,* 304 S.C. 250, 403 S.E.2d 648 (1991), also involved a claim for a temporary taking.

3. The Fifth Amendment is implicit in the due process clause of the Fourteenth Amendment to the United States Constitution and applicable to the states. *Chicago, B. & Q.R. Co. v. Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897).

There are at least two discrete categories of government action which are compensable takings without case-specific inquiry into the public interest advanced in support of the action. If state law authorizes permanent physical occupation of property, there is a taking for which just compensation is due without regard to the public interest it may serve or the minimal economic impact to the landowner. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (New York law requiring landlords to allow television cable companies to install cable facilities in their apartment buildings constituted a taking); *Kaiser Aetna v. United States*, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979) (United States could not insist upon public access to marina simply because water had become navigable without paying just compensation). Also, if state law so regulates property that it loses all economic value, there is a taking for which just compensation is due. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (taking occurs where owner of real property has been called upon to sacrifice all economically beneficial or productive use of property in the name of the common good).

In other situations, a balancing test is applied to determine whether there has been a taking. Three factors are typically balanced to decide whether the public benefit from a regulation or law outweighs the private harm to the landowner: (1) the character of the government action; (2) the economic impact of the regulation on claimant; and (3) the degree to which the regulation/law has interfered with distinct investment-backed expectations. *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). If the public benefit outweighs the harm to the landowner, there is no taking and the government need not pay compensation.

However, where a regulation or law imposes a "physical exaction" as a condition of issuing a permit, more stringent review is required. In *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), owners of a beachfront lot applied for a permit which would allow them to replace a small bungalow on the lot with a larger home. The California Coastal Commission granted the permit, sub-

ject to the condition the Nollans allow the public to pass across the beach portion of their lot to public parks on either side of their property. The coastal commission asserted various purposes in support of the permit condition, including "protecting the public's ability to see the beach, assisting the public in overcoming the 'psychological barrier' to using the beach created by a developed shorefront, and preventing congestion on the public beaches." *Id.* at 835, 107 S.Ct. 3141. The Nollans appealed. The California Court of Appeal ruled the Nollans' inverse condemnation claim failed because, although the permit condition diminished the value of the beachfront lot, it did not deprive the Nollans of all reasonable use of their property.

Recognizing the tension between the government's eminent domain authority which requires just compensation and the government's authority to restrict use of private property pursuant to its police powers without paying compensation, the United States Supreme Court (USSC) reversed. *Id.* The USSC held that had the coastal commission required the Nollans grant a public easement across their beachfront on a permanent basis rather than conditioning their permit to rebuild on an agreement to do so, there would have clearly been a compensable taking.[4] It emphasized the right to exclude others is " 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.' " *Id.* at 831, 107 S.Ct. 3141 *citing Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. at 433, 102 S.Ct. 3164. Similarly, it stated "a 'permanent physical occupation' has occurred ... where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed, even though no particular individual is permitted to station himself permanently on the premises." *Id.* at 832, 107 S.Ct. 3141.

On the other hand, the USSC recognized that "land-use regulation does not effect a taking if it 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land.' " *Id.* at 834, 107

---

4. *See Kaiser Aetna v. United States,* 444 U.S. at 181, 100 S.Ct. 383 ("And even if the Government physically invades only an easement in property, it must nonetheless pay just compensation.").

S.Ct. 3141 *citing Agins v. City of Tiburon*, 447 U.S. 255, 2660, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). If the government has a legitimate police power purpose to deny a development permit, a condition which serves the same purpose is not a taking. For instance, if the coastal commission could exercise its police power to forbid construction of the Nollans' house altogether, imposing a height limitation as a permit condition so that the public could view the beach would not be a taking.

■ The *Nollan* Court adopted the "essential nexus" test to determine whether a physical exaction condition results in a taking of property. Under the essential nexus test, the Court evaluates: 1) whether the "legitimate state interest" justifying the condition is furthered by the condition; 2) whether the condition imposed "substantially advanced the cited legitimate state interest"; and 3) whether the proposed project will "substantially impede" the legitimate state interests.

The *Nollan* Court determined the easement as a condition of the building permit effected a taking as the condition (public access) did not serve the alleged legitimate state interests of protecting the public's ability to see the beach, assist the public in overcoming the "psychological barrier" to using a developed shorefront, and preventing congestion on public beaches. Accordingly, the Nollans were entitled to compensation.

In *Dolan v. City of Tigard*, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), the USSC considered the degree to which a public exaction permit condition must relate to the projected impact of the proposed development. In *Dolan*, the landowner applied for a permit to expand her store and pave her parking lot. The city conditioned approval of the application upon the landowner's agreement to dedicate 1) a public green way in order to minimize flooding that would be exacerbated by the increases in impervious surfaces associated with the development and 2) a pedestrian/bicycle pathway to relieve traffic congestion in city's business district. The USSC determined that if an "essential nexus" existed between the "legitimate state interest" and the permit condition, a "rough proportionality" must exist between the physical exaction and the projected impact of the requested permit. The Court held there was an "essential nexus" between the legitimate public

purposes (reducing flooding and traffic) and the two permit conditions. It concluded, however, there was no reasonable relationship between the public nature of the green way (the easement could have been private) and reducing flooding. With regard to the second condition, the USSC found the city failed to demonstrate the additional traffic generated by the landowner's development reasonably related to the dedication of a pathway easement.[5]

## Whole Parcel Doctrine

 The "whole parcel doctrine" applies where there is a regulatory taking. Under this doctrine, "[i]n deciding whether a particular governmental action has effected a taking, [the Court] focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole." *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 130–31, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Beard v. South Carolina Coastal Council*, 304 S.C. 205, 403 S.E.2d 620 (1991) (same).

## Temporary Takings

 Where there is a temporary regulatory (non-physical) taking, a landowner is entitled to compensation between the effective date of an ordinance and the date of its invalidation, if the ordinance deprives the landowner of all use of his property. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). " '[T]emporary' [regulatory] takings which ... deny a landowner all use of his property, are not different in kind from permanent takings, for which

---

5. Most recently, the USSC held *Dolan*'s "rough proportionality test" applied only to physical exactions. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). Prior to *Del Monte Dunes*, there was considerable debate as to whether the *Nollan/Dolan* tests applied to more than regulations mandating physical exactions. *See* Brett Christopher Gerry, *Parity Revisited: An Empirical Comparison of State and Lower Federal Court Interpretations of Nollan v. California Coastal Commission*, 23 HARV. J.L. & PUB. POL'Y 233 (1999); David L. Callies, *Takings: Land–Development Conditions and Regulatory Takings after Dolan and Lucas*, A.B.A. SEC. STATE & LOCAL GOVERNMENT LAW (1996).

the Constitution clearly requires compensation." *Id.* at 318, 107 S.Ct. 2378.

In *First English,* the plaintiff church owned land on which it operated a campground. After a flood destroyed the campground buildings, Los Angeles County instituted a temporary regulation prohibiting reconstruction of buildings in a flood control area. The church filed suit complaining the ordinance effected a taking.

The USSC found that if the ordinance effected a taking, simply invalidating it was an insufficient remedy and the church was entitled to monetary compensation for the period of time during which it was in effect. *Id.* at 307–08, 319, 107 S.Ct. 2378. The USSC noted "[w]e limit our holding to the facts presented, and of course do not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like which are not before us." *Id.* at 321, 107 S.Ct. 2378.

## ANALYSIS

Sea Cabins claims City's Beach Franchise Ordinance conditioning a pier building permit on public access was an attempt, albeit temporary,[6] by City to gain public access to its pier without paying compensation. Based on this claim, we find analysis under the tests established in *Nollan v. California Coastal Comm'n, supra,* and *Dolan v. City of Tigard, supra,* appropriate. Assuming for purposes of these tests that City had a legitimate governmental interest in imposing the public access condition, the interest was superseded when the General Assembly passed amendments to the South Carolina Beachfront Management Act specifically authorizing the rebuilding of private piers which were in existence prior to Hurricane Hugo. Once § 48–39–290(A)(3) became effective, City no longer had a legitimate governmental interest in conditioning issuance of a pier rebuilding permit to Sea Cabins on public access. *See Barnhill v. City of North Myrtle Beach,* 333 S.C. 482, 511 S.E.2d 361 (1999) (statute preempts municipal ordinance where there are inconsistent and irreconcilable conditions between the two). Accordingly, had City conditioned

---

6. Because it ultimately obtained a rebuilding permit which did not have a public access condition, Sea Cabins asserts the taking was temporary.

Sea Cabins' rebuilding permit on public access, we conclude City would have likely effected a taking of Sea Cabins' property.

 Nonetheless, we find City did not enforce the Beach Franchise Ordinance against Sea Cabins. City denied Sea Cabins' pier rebuilding application on the basis of provisions in its Zoning Ordinance, not because Sea Cabins refused to sign a pier franchise agreement.[7] Accordingly, City's Beach Franchise Ordinance conditioning a building permit on a physical exaction (public access) did not deprive Sea Cabins of the use of its property.

 Moreover, we find City's denial of Sea Cabins' pier application based on applicable provisions of its Zoning Ordinance did not result in a temporary taking. Although City's permit denial was ultimately reversed by the Court of Appeals on the basis the circuit court considered the percentage of physical damage to the pier rather than the replacement cost of the pier, Sea Cabins has never claimed this Zoning Ordinance precluding the reestablishment of a legal nonconforming use under certain circumstances is unconstitutional in that it either failed to advance a legitimate governmental interest or denied all economically viable use of its property as a whole.[8] *See Long Cove Club Assoc. L.P. v. Town of Hilton Head Island,* 319 S.C. 30, 458 S.E.2d 757 (1995) (application of a general zoning law to a particular property effects a taking if the ordinance does not substantially advance legitimate [governmental] interests or denies an owner all economically viable use of his land). Application of City's Zoning Ordinance to Sea Cabins' pier rebuilding permit request did not effect a taking.

---

**7.** *See Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (claim that government regulations effect a taking is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding application of the regulations to the property at issue); *Anton v. South Carolina Coastal Council,* 321 S.C. 481, 469 S.E.2d 604 (1996) (taking does not occur until permit is denied).

**8.** 83 Am.Jur.2d *Zoning and Planning* § 680 (1992) (ordinances which prohibit restoration of a nonconforming use in excess of a prescribed percent of the replacement value of the destroyed or damaged property have been upheld).

■■■■■■ Further, there was no temporary taking during Sea Cabins' appeal of the adverse zoning ruling. Regulatory delay does not normally give rise to a temporary taking claim. *First English Evangelical Lutheran Church v. Los Angeles County, supra.* Similarly, although a property owner who successfully challenges the applicability of a governmental regulation is likely to have suffered some temporary harm during the process, the harm does not give rise to a constitutional taking. *See Later v. Planning and Zoning Comm'n of the Town of Cromwell,* 1992 WL 156568 (Conn.Super.Ct.1992) ("inevitable by-product" of zoning dispute is not taking); *Smith v. Town of Wolfeboro,* 136 N.H. 337, 615 A.2d 1252, 1258 (1992) ("The delay inherent in the statutory process of obtaining subdivision approval, including appeals to the superior court and to this court, is one of the incidents of ownership. Any decrease in the value of the subject property that occurs during the pendency of governmental decision making must be borne by the property owner and does not give rise to a compensable taking."); *Miller and Son Paving, Inc. v. Plumstead Township, Bucks County,* 552 Pa. 652, 717 A.2d 483 (1998) (delays attributable to legal challenges to zoning provisions do not automatically constitute taking); *Chioffi v. City of Winooski,* 165 Vt. 37, 676 A.2d 786 (1996) (regulatory delay resulting from zoning board's denial of variance, which was ultimately granted after appeal and remand for new trial, did not constitute temporary taking entitling property owner to compensation for period of delay).[9]

In conclusion, we hold City's actions did not result in a temporary taking of Sea Cabins' pier. We affirm the Court of Appeals' decision reversing the award of compensation to Sea Cabins.

**AFFIRMED IN RESULT.**

TOAL, C.J., and MOORE, WALLER and PLEICONES, JJ., concur.

---

9. This is not to say a property owner has no remedy when the government acts arbitrarily. *See Worsley Companies, Inc. v. Town of Mount Pleasant,* 339 S.C. 51, 528 S.E.2d 657 (2000) (substantive due process prohibits a person from being denied life, liberty, or property for arbitrary reasons). In proper circumstances, a property owner may have a due process or tort claim for damages. *See* John D. Echeverria, *Takings and Errors,* 51 ALA. L.REV. 1046 (2000).